438 P.2d 952

Rosemary FOSTER, Petitioner,

v.

J. Thomas BROOKS, Judge of the Superior Court of the State of Arizona, In and For the County of Coconino, Respondent,

Joseph E. Patrick, Respondent-Real Party in Interest.

No. 1 CA–CIV 761.

Court of Appeals of Arizona.

March 28, 1968.

Rehearing Denied April 29, 1968.

Stevenson, Warden & Smith, by Jerry L. Smith, Flagstaff, for petitioner.

Goodson, Richmond & Rose, by John F. Goodson, Phoenix, for respondent, Joseph E. Patrick.

STEVENS, Judge.

In the above numbered Superior Court cause, the Respondent Judge granted the motion of Patrick to strike the answer of the petitioner to Patrick's counterclaim and to enter the petitioner's default in relation to the counterclaim by reason of her failure to appear for the taking of her deposition. The rule pursuant to which the Respondent Judge entered his order is Rule 37(d), Rules of Civil Procedure, 16 A.R.S., which reads, in part, as follows:

"* * * If a party * * * *wilfully fails to appear* before the officer who is to take his deposition, after being served with a proper notice, * * * the court *on motion and notice* may strike out all or any part of any pleading of that party, * * * or enter a judgment by default against that party." (Emphasis supplied)

The petitioner, believing that the action of the Respondent Judge constituted an abuse of judicial discretion, filed the proceeding now under consideration in this Court seeking to compel the Respondent Judge to va-

cate his order and to reinstate the stricken pleadings. After an informal hearing, as provided by the rules, this Court took the matter under advisement and then entered its order restraining the Respondent Judge from entering judgment in favor of Patrick and against the petitioner with leave, however, to exercise his discretion to vacate the order to reinstate the stricken pleadings and to proceed to a trial on the merits. The order further provided that in the absence of the exercise of that discretion, the records in the Superior Court action were required to be certified to this Court. The Respondent Judge was afforded the opportunity to comply with the suggestion of this Court. He reaffirmed his prior ruling. Thereupon, the records were certified to this Court. This Court now has the responsibility of determining whether the ruling of the Respondent Judge was an abuse of discretion and if so, was such an abuse of discretion sufficient to warrant this Court in assuming jurisdiction to grant extraordinary relief? State ex rel. Ronan v. Superior Court, 95 Ariz. 319, 390 P.2d 109 (1964); Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966); Agraan v. Superior Court in and for Pima County, 4 Ariz.App. 141, 418 P.2d 161 (1966).

It becomes necessary to review the Superior Court background in some detail. Dateline Broadcasters, Inc., a corporation, held a license for the operation of a radio station in Flagstaff. The petitioner and her then husband Charles L. Foster, were interested in acquiring the capital stock of the corporation together with the license for the operation of the radio station. During the period of negotiation, there were a number of problems in relation to the consummation of the transaction. These apparently did not end with the execution of a written contract bearing date of 4 February 1964 wherein the Fosters were the buyers and the respondent-real party in interest Patrick, along with one Brandt, were the sellers.

On 21 April 1965 the Fosters filed a civil action in the Superior Court for Coconino County being Cause No. 22383. The above contract was attached to the complaint. Among the named defendants were the corporation, Patrick and a number of the corporate creditors. The Fosters alleged a failure on the part of the sellers to perform resulting in the necessity of going off the air so far as the radio station was concerned, requesting the appointment of a receiver, the liquidation of the corporation and other relief. After the entry of a number of defaults and the filing of a number of stipulations, a receiver was appointed on 23 July 1965. In the meantime and on 20 May 1965, Mr. Foster died in Texas, a resident of Texas. The date and fact of his death did not become a matter of the official record in the court file until 24 February 1966.

Patrick became aggressively active in this case in November 1965. On 22 November, through his Phoenix counsel, he filed a counterclaim against the Fosters seeking actual and punitive damages for a claimed breach of the agreement. He submitted extensive interrogatories, the first question inquiring as to the date of Mr. Foster's death and the first 13 questions relating to matters pertaining to Mr. Foster's estate. Patrick was aware of the Texas residence of the Fosters in that he sent a copy of the interrogatories to Mrs. Foster at her Texas address. It was the petitioner's response which was filed on 24 February 1966 which first made the fact of Mr. Foster's death an official part of the file. Also, on 22 November, Patrick gave notice of the taking of the petitioner's deposition in Phoenix on 10 December 1965. On 24 November Patrick served a searching request for admissions of fact and acknowledgment of genuineness of documents to which was attached a series of exhibits, this particular filing being approximately one-half inch thick.

On 7 December the petitioner moved for a protective order by reason of her residence in Texas. This was countered with a notice to take her deposition in Phoenix on 15 December and the petitioner moved to

quash the notice. At the hearing the following order was entered by Judge Wren:

> "With reference to the Motion to Quash Talking (sic) of Deposition of James L. Young and Rosemary Foster, it is stipulated that * * * the deposition of Rosemary Foster may be taken in Arizona just prior to the trial date as shall be agreed to by counsel, or in the alternative that she may be deposed in Arizona at a time and place to be stipulated by counsel. * * *"

On 16 January 1966, Phoenix attorney John C. Hughes, filed his petition to intervene and on 28 February, filed his claim against the petitioner, the corporation and Patrick. There were further efforts in relation to discovery by interrogatories and requests for admissions. On 6 February 1967, Judge Wren conducted a pretrial conference and the pretrial order permitted a limited period of further discovery setting the cause for trial for 1 May 1967.

In the meantime Flagstaff counsel were associated in representing the interests of Patrick and they noticed the petitioner for deposition in Flagstaff for 21 April 1967. The petitioner then secured a protective order signed by the Respondent Judge continuing the deposition to a time certain on 29 April. In the meantime, Phoenix counsel for Patrick noticed the petitioner for deposition in Flagstaff for 29 April for an hour differing from the hour specified in the court's order. On 29 April, Judge Wren, recognizing a conflict in the court's calendar and for the court's convenience, reset the cause for 17 July. The record certified to this Court does not contain a disposition in relation to the deposition of the 29th of April, whether it be by virtue of the notice or by virtue of the court's order. On 29 April, Phoenix counsel for Patrick mailed a notice of taking deposition scheduling the same for Flagstaff for 27 May, the notice therein reciting:

> "This is a re-notice of the deposition of the Plaintiff Rosemary Foster. All parties are put on notice that this Plaintiff has failed to appear at the various depositions that were scheduled of her, and in the event that she does not appear at this next-noticed deposition, this party shall petition to the Court for sanctions against this Plaintiff for her refusal to cooperate with discoveries."

Hughes also noticed the petitioner for deposition at the same time and place. In relation to these noticed depositions, the petitioner secured a protective order signed by Judge Wren on 26 May 1967. This order was based upon a doctor's affidavit as to the petitioner's health and her avowal in the motion that she would submit herself to deposition in Tyler, Texas, the city of her residence, or in Arizona two days prior to trial date.

The trial date of 17 July having been continued to 18 July, Patrick's Phoenix counsel gave notice on 6 July as to the taking of the petitioner's deposition in Flagstaff on 15 July. On the date prior to the date specified in the notice, petitioner moved to vacate the deposition and to vacate the trial date, again for medical reasons. Patrick resisted the vacating of the deposition and the vacating of the trial date and on 17 July, the Respondent Judge reset the cause for 30 October 1967 for a four day jury trial, the order stating, in part:

> "FURTHER ORDERED that the plaintiff, Rosemary Foster, shall make herself available within the City of Dallas, Texas or at such other location as might be agreed upon by counsel, for the purpose of submitting to a deposition upon receiving 10 days notice thereof."

The file contains a reporter's transcript of the 17 July hearing and the Respondent Judge's comments at the time of the hearing indicated his reluctance to grant the continuance, pressing petitioner's counsel for an avowal as to when the petitioner would be physically able to be present for trial.

Although the notice of taking deposition is not in the file, petitioner's counsel apparently gave notice of the taking of petitioner's deposition in Dallas, Texas, the same to be taken on 16 October 1967. This

is confirmed by a letter from petitioner's counsel under date of 12 October to Patrick's Phoenix counsel, the letter reciting, in part, as follows:

"Notice of the Deposition of Rosemary Foster and possibly Don Auclair, for October 16, 1967, in Dallas, Texas was agreed upon between yourself and myself at a convenient time and before a court reporter.

"At the time of the deposition I will place in the record that you are unable to attend because of financial reasons and that you are reserving all objections until time of trial."

Petitioner's deposition was not taken in Dallas on 16 October, a matter which apparently perturbed the Respondent Judge. For ought that appears in the record she was in Dallas ready for deposition and it was Patrick who was urging that her deposition be taken. For ought that appears in the record, no one appeared at the designated time and place on behalf of Patrick or Hughes. If petitioner's counsel cancelled the taking of her deposition in Dallas, it would be understandable in that for some reason on 13 October, Patrick's Phoenix counsel served notice that the petitioner's deposition would be taken in Flagstaff on 28 October at 10:00 a. m. This was Saturday before the Monday on which the trial was to commence, four days again having been reserved for the trial.

The petitioner was not present at the appointed time. A brief reporter's transcript was made in relation to the petitioner's absence at which her counsel made the following statement:

"MR. SMITH: Well, for the record, I received a call Thursday evening about 9:00 o'clock. Mrs. Foster informed me that due to her husband's job and economic reasons, they would not be here until late Saturday evening or early Sunday morning. I informed Mr. Mangum by telephone call, as I recall, that she wouldn't be here until then. And, I was further informed that she and her husband were driving and that they would be on their way by motor vehicle."

A later record shows that petitioner arrived in Flagstaff Saturday evening and was in the office of her attorney on Sunday at which time an offer to submit her to deposition was phoned to Flagstaff counsel. On Monday, the 30th, the attorneys met for a pretrial conference prior to the scheduled commencement of the trial. On that day Patrick's counsel filed a motion to strike her answer to the Patrick claim and to enter her default in relation thereto. The petitioner requested leave to withdraw all affirmative claims for relief and to relegate herself to the status of a defendant in relation to the claims urged by Patrick and Hughes. This was resisted. The petitioner urged that when the receiver was appointed, she had in effect lost her status as a plaintiff and had been relegated to the status of a defendant in relation to the Patrick and Hughes claims; that the record negated any willful failure to appear and that there was an absence of notice of the motion as required by rule. After considerable argument, the Respondent Judge properly permitted the petitioner to withdraw all claims for affirmative relief. The Respondent Judge then granted the Patrick motion but permitted the petitioner's response to the Hughes' pleadings to remain.

The petitioner was thereafter placed on the stand to explain her absence from the taking of the deposition on October 28th. Since the death of Mr. Foster she had married Mr. Louis Yanero who accompanied her on the trip. As soon as she received notice of the taking of the 28 October deposition she made plans to attend the deposition. Plans were made that her 15 year old son would be cared for by her husband's brother, and in the opinion of this Court, due to the length of the drive and the contemplated period of the trial, this is not an unusual precaution to take. There was a death in the family of the husband's brother which prevented them from arriving at the petitioner's home in sufficient time to permit the petitioner to drive

to Flagstaff to meet the appointed deposition. They could not afford to fly. As soon as this was ascertained, and on Thursday before the Saturday deposition, she was able to telephone her Flagstaff counsel. Mr. Smith acknowledged that his statement made on the 28th was an assumption on his part and he regretted that he had not made further inquiry as to the reason for her inability to be in Flagstaff on the 28th. The petitioner was in no manner questioned as to her health or as to the validity of the doctor's statements which had been used for earlier continuances. Petitioner offered to place her husband upon the stand to verify her testimony and counsel for the opposition advised that it was not necessary. Petitioner moved to vacate the order striking her pleadings and entering her default which was denied. Evidence was received in relation to the Hughes claim and judgment has been entered. Evidence was received in relation to the Patrick claim and an order for judgment in the sum of $49,500 was entered. The judgment has not been entered by reason of the restraining order heretofore entered by the Court of Appeals.

From a review of the record and a reading of the various transcripts which have been presented, this Court reaches the conclusion that the petitioner cannot be charged with willful failure to attend the deposition. This rule is discussed in American Title & Trust Company v. Hughes, 4 Ariz.App. 341, 420 P.2d 584 (1966), and we find the situation to be very different from that set forth in that case. There was extensive prior discovery and while the attorneys argued that the petitioner had been evasive in her responses, it is noted that no effort was made to require that they be enlarged. We reluctantly hold that there was an abuse of judicial discretion in that degree which requires the granting of extraordinary relief.

The issuance of the mandate in this cause will constitute a directive to the Respondent Judge to vacate the order for judgment in favor of Patrick and against the petitioner herein; to vacate the order striking her pleadings addressed to the Patrick claim and the entry of her default in relation to the Patrick claim; to reinstate the petitioner's stricken pleadings; and the Respondent Judge may thereafter proceed in a manner consistent with this opinion.

CAMERON, C. J., and DONOFRIO, J., concur.