NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHELLE F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.B., *Appellees*.

No. 1 CA-JV 16-0351
FILED 6-6-2017

Appeal from the Superior Court in Maricopa County
No. JD527717
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge James P. Beene joined.

---

**W I N T H R O P**, Judge:

¶1        Michelle F. ("Appellant") appeals the juvenile court's orders denying her motion to disestablish/establish paternity and granting DCS's motion for change of custody.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Kiyah-Tee Clarice Pease ("Mother") gave birth to M.B. ("the child") in September 2013 and left Arizona shortly thereafter.  The child stayed in Arizona and resided with Bobby Bonwell ("Father").[1]  At the time, Father was involved in a romantic relationship with Appellant, and Appellant and her minor son lived with Father and the child.

¶3        In May 2014, DCS took the child into temporary physical custody and alleged he was dependent as to Mother, who was incarcerated in South Dakota at the time, and Father, due to substance abuse.  After Father moved out of the home he shared with Appellant, the child was placed with Appellant.  Two months after the juvenile court found the child dependent, Father died.  The juvenile court later terminated Mother's rights to the child, and the child became eligible for adoption.[2]

¶4        In March 2015, while the child was still placed with Appellant, Appellant was involved in a domestic dispute with a man who was living in her home.  Around the same time, Appellant's minor son made statements at school that led to a child molestation investigation.  The child was removed from Appellant's care, but he was ordered returned to

---

[1]        Father's paternity was established through a voluntary acknowledgment of paternity, and he is listed as the father on the child's birth certificate.

[2]        Mother's rights are not at issue in this appeal.

her two months later, on the condition that a safety monitor reside in the home.[3]

¶5        Appellant then began the certification process to adopt the child.[4]  However, in December 2015, DCS moved for a change of physical custody, requesting the child be removed from Appellant's care.[5]  The court did not immediately rule on the motion.

¶6        As part of the adoption certification process, Appellant was required to participate in a home study.  An initial home study report recommended Appellant be certified to adopt the child, but a subsequent report recommended against certification due to "numerous inconsistencies provided by [Appellant] regarding her medical diagnoses, prescribed medications, income, history of substance abuse[,] and DCS involvement."  The author of the initial home study report later retracted her recommendation for certification.

¶7        In March 2016, Appellant revealed that her adult son, Charles Taylor, was involved in a sexual relationship with Mother at the time the child was conceived.  DNA testing confirmed that Taylor is the biological father of the child, making Appellant the child's biological paternal grandmother.  Based on the DNA test results, Appellant moved for court orders disestablishing the paternity of Father (who had died approximately eighteen months earlier) and establishing the paternity of Taylor.

¶8        After an evidentiary hearing, the juvenile court denied Appellant's motion, concluding that she lacked standing pursuant to

---

[3]        DCS also removed Appellant's minor son from her care and filed a dependency action.

[4]        Appellant's minor son was still in out-of-home care while that dependency case proceeded, but he was eventually returned to her after she successfully completed reunification services.

[5]        As reasons for its request, DCS cited, among other things, Appellant's history of being in abusive relationships, her history of substance abuse, her inability to obtain a fingerprint clearance card due to prior criminal convictions, and the dependency action involving her minor son.

Arizona Revised Statutes ("A.R.S.") section 25-803(A) (2017)[6] and, even assuming standing, her motion was untimely under A.R.S. § 25-812(E) (2017).[7] Finding Father "is considered the child's legal father," the court concluded Appellant "is not a legal grandparent under Arizona law." The court also granted DCS's motion to have the child removed from Appellant's care.

¶9 Appellant timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A) (2014); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

¶10 Appellant argues the juvenile court erred in denying her motion to disestablish/establish paternity and abused its discretion in granting DCS's motion to change physical custody.

     I.     *Motion to Disestablish/Establish Paternity*

     a.     *Standard of Review*

¶11 Because Father's voluntary acknowledgment of paternity had "the same force and effect as a superior court judgment," *see* A.R.S. § 25-812(D), we construe Appellant's motion to disestablish/establish paternity as a motion for relief from judgment. *See* Ariz. R. Civ. P. 60. We review a juvenile court's denial of a motion for relief from judgment for an abuse of discretion, *State ex rel. Brnovich v. Culver*, 240 Ariz. 18, 19-20, 375 P.3d 83, 84-85 (App. 2016), but review *de novo* the interpretation of statutes and rules. *Andrew R. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 453, 456, 224 P.3d 950, 953 (App. 2010).

---

6     A.R.S. § 25-803(A) provides that proceedings to establish paternity may be commenced by (1) the mother, (2) the father, (3) the guardian, conservator, or best friend of a child born out of wedlock, (4) a public welfare official or agency, or (5) the state.

7     "Pursuant to rule 85(c) of the Arizona rules of family law procedure, the mother, father or child, or a party to the proceeding on a rule 85(c) motion, may challenge a voluntary acknowledgment of paternity established in this state at any time after the sixty day period only on the basis of fraud, duress or material mistake of fact . . . ." A.R.S. § 25-812(E).

### b.     Standing

**¶12**     Appellant contends the juvenile court erred in relying on A.R.S. § 25-803(A) to determine she lacked standing, and instead should have considered the statutes addressing legal decision-making and parenting time. According to Appellant, because she stands *in loco parentis* to the child, she has standing to commence paternity proceedings pursuant to A.R.S. § 25-409 (2017). But A.R.S. § 25-409 establishes third party rights as they pertain to legal decision-making authority or placement of the child. *See* A.R.S. § 25-409(A) (stating that, under certain circumstances, "a person other than a legal parent may petition the superior court for legal decision-making authority or placement of the child"). Appellant did not seek legal decision-making authority or placement of the child under Title 25. Rather, Appellant has commenced paternity proceedings, and a party's standing to commence paternity proceedings is established pursuant to A.R.S. § 25-803(A). Accordingly, the juvenile court did not err in relying on A.R.S. § 25-803(A) to determine Appellant lacked standing to commence paternity proceedings.

**¶13**     Appellant further asserts that, even assuming A.R.S. § 25-803(A) applies, the juvenile court incorrectly concluded she lacked standing because she is "at the minimum, the 'best friend of a child . . . born out of wedlock.'" *See* A.R.S. § 25-803(A)(3). However, Appellant does not develop this argument or provide support with citations to relevant authorities. Consequently, that argument is waived. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (stating that the failure to develop and support an argument waives the issue on appeal).

**¶14**     Appellant next argues the juvenile court erroneously relied on A.R.S. § 25-812(D) instead of A.R.S. § 25-812(E) to conclude she lacked standing. Under A.R.S. § 25-812(D), a properly executed voluntary acknowledgement of paternity may be filed with Arizona Department of Economic Security ("ADES"), which shall provide a copy to the Department of Health Services, and those actions and that affidavit have "the same force and effect as a superior court judgment." *See also Andrew R.*, 223 Ariz. at 457, ¶ 18, 224 P.3d at 954. Here, Father's name appears on the child's birth certificate because, shortly after the child's birth, Father signed an affidavit of paternity, which was filed with ADES. Therefore, the juvenile court did not err in concluding, pursuant to A.R.S. § 25-812(D), that Father is the child's legal father and Appellant is not a legal grandparent under Arizona law.

**¶15**        Appellant relies on A.R.S. § 25-812(E) to support her argument that the juvenile court should have vacated the judgment of Father's paternity and established the paternity of Taylor. A.R.S. § 25-812(E) states:

> Pursuant to rule 85(c) of the Arizona rules of family law procedure, the mother, father or child, or a party to the proceeding on a rule 85(c) motion, may challenge a voluntary acknowledgment of paternity established in this state at any time after the sixty day period only on the basis of fraud, duress or material mistake of fact . . . . The court shall order the mother, her child or children and the alleged father to submit to genetic testing . . . . If the court finds by clear and convincing evidence that the genetic tests demonstrate that the established father is not the biological father of the child, the court shall vacate the determination of paternity and terminate the obligation of that party to pay ongoing child support.

According to Appellant, the DNA test results in this case constituted "clear and convincing evidence" that Father is not the biological father of the child, which required the juvenile court to vacate the judgment of Father's paternity and establish the paternity of Taylor. But Appellant's reliance on A.R.S. § 25-812(E) is misplaced because A.R.S. § 25-812(E), when read in its entirety, applies only in circumstances where the individual challenging paternity establishes fraud, duress, or material mistake of fact. Here, Appellant has not made such claims, instead contending the DNA test results constitute "newly discovered evidence." Accordingly, the juvenile court did not err in denying Appellant's motion to vacate the judgment establishing Father's paternity.

> c.        Timeliness

**¶16**        Appellant also argues that, pursuant to Arizona Rule of Family Law Procedure 85(C), her motion to disestablish/establish paternity was timely because she filed the motion "sixty days after the DNA tests revealed her son was the biological father." Arizona Rule of Family Law Procedure 85(C)(1)(b) permits a party to move for relief of a final judgment based on newly discovered evidence, however, such motions must be filed "not more than six (6) months after the judgment or order was entered." Ariz. R. Fam. Law P. 85(C)(2). Here, Father's paternity was established around the time of the child's birth in 2013, and Appellant moved for the disestablishment/establishment of paternity in 2016, more than two years

later. Accordingly, the juvenile court did not err in concluding Appellant's motion was untimely.

## II.     *DCS's Motion to Remove the Child/Change Physical Custody*

¶17         Appellant also challenges the juvenile court's grant of DCS's motion for a change of physical custody. We review the juvenile court's orders on placement of a child for an abuse of discretion. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, 187 P.3d 1115, 1117 (App. 2008). The juvenile court is "in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002).

¶18         Appellant argues it is not in the child's best interest to remove him from her home because she is "the only consistent and loving parent he ever had." On the record presented, however, Appellant has not shown the juvenile court improperly weighed the evidence or failed to consider the child's best interest. The juvenile court recognized the child's bond with Appellant, noting "[t]he child has been with [Appellant] for the majority of his young life." But the court also considered that the child had been removed from Appellant's care on two occasions, that Appellant failed to provide truthful information during the adoption certification process, that Appellant did not pass the fingerprint clearance requirement for adoption certification, and that DCS would not consent to the child's adoption by Appellant. Accordingly, reasonable evidence supports the juvenile court's findings and conclusion that it was in the child's best interest "to obtain permanency without further delay," and we find no abuse of discretion.

## CONCLUSION

¶19         The juvenile court's orders denying Appellant's motion to disestablish/establish paternity and granting DCS's motion to change physical custody are affirmed.

